**O**

# United States District Court
# Central District of California

| | |
|---|---|
| CRAIG ROSS; NATALIE OPERSTEIN, | Case № 2:17-cv-04149-ODW-JC |
| Plaintiffs, | |
| v. | **ORDER GRANTING, IN PART,** |
| P. TIMOTHY WHITE, et al., | **DEFENDANTS' MOTIONS TO** |
| Defendants. | **DISMISS [87, 89, 119]** |

## I.    INTRODUCTION & PROCEDURAL BACKGROUND

In May 2016, Plaintiffs Craig Ross and Dr. Natalie Operstein applied to the Court for a temporary restraining order enjoining The Board of Trustees of California State University from terminating Operstein's employment.[1] *Craig Ross, et al. v. The Board of Trustees of California State University*, Case No. 2:16-cv-3778-ODW-JC, ECF No. 1 (C.D. Cal. May 31, 2016) (hereinafter, "*Ross I*"). On June 14, 2016, the Court denied Plaintiffs' application because they could not show irreparable harm, among other reasons. *Id.* at ECF No. 13, *available at* 2016 WL 9211742, at \*2–3 (C.D. Cal. June 14, 2016), *aff'd*, 679 F. App'x 579 (9th Cir. 2017). Plaintiffs later

---

[1] On May 15, 2016, Plaintiffs filed an action entitled, *Craig Ross, et al. v. Board of Trustees of California State University*, in Los Angeles Superior Court. Case No. SC12558. The state action seems to be based, in large part, on the same nucleus of fact at issue here. Whether the state action has any preclusive effect has not be raised by defendants in these motions.

filed two motions seeking reconsideration, and to reopen their case, respectively, and the Court denied both. *Id.* at ECF Nos. 42, 58. Plaintiffs appealed these orders. *Id.* at ECF No. 59.

On June 2, 2017—the same day Plaintiffs filed their Motion to Reopen Case in *Ross I*—Plaintiffs filed their Complaint in this action ("*Ross II*"), alleging several causes of action against over 50 defendants. (Compl., ECF No. 1.[2]) Plaintiffs' claims are derivative of California State University ("CSU") denying Operstein a tenured position at CSU Fullerton ("CSUF"). On November 8, 2017, Defendants' moved to dismiss on several grounds. (ECF Nos. 61–62.)

On December 15, 2017, in response to the motion, Plaintiffs filed a First Amended Complaint ("FAC"), which included allegations against several new defendants. (FAC, ECF No. 68.) Plaintiffs named Xavier Becerra, California's Attorney General, Elizabeth Frater, Deputy Attorney General and counsel in this case, and Robin Graboyes, an employee of CSUF, among a few others. (*Id.*) The Court denied Defendants' first motion to dismiss, as moot, on December 18, 2017. (ECF No. 84.) The majority of Defendants (collectively, "Majority Defendants[3]") moved to dismiss the FAC on January 2, 2018. (ECF Nos. 87–88.) Majority Defendants include various CSU employees and members of the Board of Trustees, among others.

On January 11, 2018, Becerra, Frater and Graboyes (collectively, "Becerra Defendants") moved, independently, to dismiss the FAC. (ECF No. 89.) On

---

[2] All further references to ECF Nos. refer to *Ross II* unless otherwise noted.

[3] The Majority Defendants include Timothy P. White, Silas Abrego, John Beisner, Emily Bonney, Edmund G. Brown, Jr., James Busalacchi, Jane W. Carney, Jose Luis Cruz, Lana Dalley, Adam Day, Rebecca D. Eisen, Douglas Faigin, Debra S. Farar, Jean P. Firstenberg, Sheryl Fontaine, Jacqueline Frost, Juan Carlos Gallego, Lupe Garcia, Mildred Garcia, Lori Gentles, Shahin Ghazanshahi, Kristi Kanel, Lillian Kimbell, Judy King, Robert Koch, John Koegel, Philip Lee, Michael Loverude, Thelma Melendrez de Santa Ana, Stephen Mexal, Lou Monville, Hugo N. Morales, Franz Mueller, Gavin Newsom, John Nilon, Kim Norman, J. Lawrence Norton, Barry Pasternack, Steve Relyea, Colleen Regan, Anthony Rendon, Jill Rosenbaum, Patricia Schneider-Zioga, Monique Shay, Lateefah Simon, Steven Stepanek, Peter J. Taylor, Tom Torlakson, Ofir Turel, Framroze Virjee, and Angela Della Volpe.

February 1, 2018, Plaintiffs filed a Second Amended Complaint[4] ("SAC"), which only amended the claims against the Becerra Defendants. (ECF No. 102.) On February 21, 2018, the Becerra Defendants moved to dismiss the SAC, mooting their first motion. (ECF No. 119.)

The Court has also ruled on many ex parte applications filed by Plaintiffs, and referred several motions to disqualify judges in this district, pursuant to the Court's General Order. (*See, e.g.*, Referral Order, ECF No. 11.) All motions to disqualify have been denied.

Now, the Court considers the two pending motions to dismiss, both premised on Federal Rules of Civil Procedure 12(b)(1), and 12(b)(6). Plaintiffs oppose both motions.[5] (ECF Nos. 104, 113, 122, 123.) For the reasons discussed below, the Court **GRANTS, IN PART,** Defendants' Motions.[6]

## II.    REQUESTS FOR JUDICIAL NOTICE

Becerra Defendants request that the Court take judicial notice of the filing of Plaintiffs' other actions. (Req. for Jud. Not., ECF Nos. 91, 120.) Plaintiffs request that the Court take judicial notice of a ruling in their concurrent state-court action. (Req. for Jud. Not., ECF No. 140.) The Court may take judicial notice of any fact that is "not subject to reasonable dispute in that it is either (1) generally known within the

---

[4] The SAC, which is the operative complaint, includes claims against the Majority Defendants, the Becerra Defendants, Kamala D. Harris, Rosa Viramontes, Anita Denise Ramos, and several unknown officials from courts and universities. (*See generally* SAC, ECF No. 102.) Plaintiffs served Anita Denise Ramos and Rosa Viramontes on April 15, 2018, but they have not yet appeared. (Proof of Service, ECF No. 145.) Plaintiffs also purport to have served Kamala Harris, and the Clerk entered her default. (Proof of Service, ECF No. 131; Not. of Errata, ECF No. 142.) The Court will address the propriety of service on Harris in a separate order.

[5] Plaintiffs' opposition to the Majority Defendants' Motion to Dismiss is 69 pages, in violation of the Local Rules. After they filed their voluminous Opposition, they then applied ex parte to file an even longer, 111-page Opposition. (ECF No. 113.) The Court denied their request. Despite its ability to strike the portions of Plaintiffs' Opposition in excess of the page limits, the Court considers the first opposition (ECF No. 104) in whole. The Court will not consider pages in excess of the limits in future filings.

[6] After considering the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument. Fed. R. Civ. P. 78(b); C.D. Cal. L.R. 7-15.

territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court shall take judicial notice of such a fact if requested by a party and supplied with the necessary information. Fed. R. Evid. 201(d). "A trial court may presume that public records are authentic and trustworthy." *Gilbrook v. City of Westminster*, 177 F.3d 839, 858 (9th Cir. 1999) (citing *Johnson v. City of Pleasonton*, 982 F.2d 350, 352 (9th Cir. 1992)). Accordingly the Court takes judicial notice of the filings requested, but not the truth of the facts contained therein. *Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001).

Plaintiffs also request that the Court take judicial notice of several articles, mainly pulled from websites. (Req. for Jud. Not., ECF No. 105.) The Court denies this request because the facts are not readily verifiable, and are not matters of public record. *See id.*

## III.   FACTUAL BACKGROUND

Plaintiffs allege civil rights violations arising from the "introduction, implementation and approval of [a] racial ethnic change policy…." (SAC ¶ 3.) They also allege a conspiracy whereby Defendants Harris, Becerra, Frater, Graboyes, and other unknown officials denied Plaintiffs "access to the courts in relation with their Title VII injunction request and prosecution of their civil rights claims in federal and state courts." (*Id.* at ¶ 56.)

### A.   Operstein, Ross, & the Ethnic Change Policy

Operstein was a professor at CSUF from approximately 2011 to 2016. (*Id.* at ¶ 41.) She "is an international scholar with an over 2 (two) decade long scholarly academic career." (*Id.* at ¶ 40.) "Dr. Operstein is [also] a non-Hispanic legal immigrant of foreign national origin, and a woman over 47 years old." (*Id.*) Operstein was employed by CSU "under a lifetime contract," which was subject to performance-related covenants. (*Id.* at ¶ 41.) She claims she "fulfilled and exceeded the substantive contractual performance requirements of all said covenants, and her

rights to the lifetime contract became vested" by fall 2013.  (*Id.*)  And by fall 2014, Operstein had "substantially exceeded the contractual performance requirements…." (*Id.*)

In 2012, Garcia, "with the approval and aid of Defendants White, Brown, and Defendants Board Members, introduced an official ethnic change policy and strategic goal to make Hispanics the majority among faculty administrators and staff at the CSUF campus…." (*Id.* at ¶ 42.)  After Defendants implemented this policy, Operstein "was subjected to years of continued hostile environment harassment on the basis of her race, ethnicity, national origin, age and gender, with the purpose of her constructive discharge and/or interference with her fulfillment of" her contractual obligations.  (*Id.*)  In June 2015, Defendants denied Operstein early promotion and tenure, terminated her lifetime contract, and "replaced it with the lifetime tenure contract of a younger Hispanic male." (*Id.* at ¶ 46.)  As a result she suffered monetary losses, and damage to her reputation, which prevents her from obtaining employment elsewhere.  (*Id.* at ¶¶ 43–46.)

Ross is Operstein's husband.  He too "has a Ph.D., international scholarly reputation[,] substantial scholarly contribution[,]…and extensive and successful teaching experience at several universities."  (*Id.* at ¶ 43.)  He claims to have lost a community property interest in Operstein's income, as well entitlement to her fringe benefits, including, but not limited to, pension, health insurance, etc.  (*Id.*)  In addition to these damages, which are derivative of his wife losing her job, he claims "[h]e is seeking academic positions at CSU and CSUF…and the Hispanization / Ethnic Change Policy…prevents him from equal competition for these positions with candidates of Hispanic and Asian ethnicities preferred under said policy."  (*Id.*)

Plaintiffs claim monetary damages for past harm, future lost earnings and fringe benefits, as well as injunctive relief preventing the Defendants from continuing to implement the ethnic change policy.  (*See id.* at 45–46.)  They sue 51 government

actors at varying levels, and from various branches of the state and federal government, in their official and personal capacities.

Majority Defendants move to dismiss on the grounds that: 1) Ross does not have standing; 2) claims against Defendants in their official capacities are barred by the Eleventh Amendment; 3) Defendants are entitled to qualified immunity; and 4) Plaintiffs fail to sufficiently allege facts to state claims.

**B.**   **Plaintiffs' Access to Courts Conspiracy & Becerra Defendants**

Plaintiffs sue Frater as a Supervising Deputy Attorney General in her personal capacity for "participation in the conspiracy to deny plaintiffs access to courts and obstruct justice by submission of perjurious declarations to state and federal courts, arguing said declarations while knowing their falsity, and for resulting damages." (*Id.* at ¶ 33.)  Becerra is sued as California Attorney General in his official and personal capacity for "failure to prevent conspiracy to deny plaintiffs access to courts and obstruct justice by submission of perjurious declarations to state and federal courts, allowing his subordinates to argue said declarations in his name and on his behalf in the court(s), and for resulting monetary damages, and in official capacity for injunctive relief." (*Id.* at ¶ 35.)  Defendant Graboyes is also sued as a CSU employee "for participation in the conspiracy to deny plaintiffs access to courts and obstruct justice by signing perjurious declarations which were filed with the state and federal courts." (*Id.* at ¶ 31.)

Becerra Defendants move to dismiss these claims because they claim to be entitled to absolute immunity.

## IV.   LEGAL STANDARD

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).  A court may also dismiss a complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1).

To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). These factual allegations must provide fair notice and enable the opposing party to defend itself effectively. *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee*, 250 F.3d at 688. But a court need not blindly accept conclusory allegations, unwarranted deductions of fact, and unreasonable inferences. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

## V.    DISCUSSION

While Becerra Defendants and the Majority Defendants move to dismiss the SAC independently, some of their arguments overlap.[7]

### A.    Ross's Standing

Defendants argue Ross does not have standing to pursue his claims. Ross asserts two main theories of injury in-fact: 1) he lost his community property interest in his wife's income, and fringe benefits; and 2) that he has "extensive and successful teaching experience at several universities, [and]…is seeking academic positions at CSU and CSUF," but the "Hispanization/Ethnic Change Policy at CSUF and CSU

---

[7] Because the SAC only amended allegations against the Becerra Defendants, the Court construes the Majority Defendants' Motion, which is nominally to dismiss the FAC, as directed at the SAC, which, as to them, remains the same as the FAC.

prevents him from equal competition for these positions…." (SAC ¶ 43.)

The parties do not dispute that CSU never employed Ross. His claims largely depend on his continued marriage to Operstein, through which he received a community property interest in her salary, and benefits. In *Bachelder v. America West Airlines, Inc.*, the Ninth Circuit mentioned, but did not directly address, a similar issue. 259 F.3d 1112, 1118 n.1 (9th Cir. 2001). There, the district court found that a husband had standing to sue because he had a community property interest in his wife's earnings under Arizona law. *Id.* On appeal, the Ninth Circuit explained that "the standing question is irrelevant in this case because [the wife] unquestionably has standing to sue, and [the husband's] presence as a plaintiff has no effect on the relief available." *Id.* Here, in contrast, it seems that Ross seeks damages for loss of consortium, independent of any damages suffered by Operstein. (*See, e.g., id.* ¶¶ 43, 52–53.) Furthermore, to the extent Operstein were to collect in this action, Ross might be entitled to recover his community-property portion of the judgment, regardless of his status as a plaintiff in this action. *See Barnett v. First Nat. Ins. Co. of Am.*, 184 Cal. App. 4th 1454, 1460 (2010) (citing *Vick v. DaCorsi*, 110 Cal. App. 4th 206, 211 (2003)) ("As defendant points out, however, with certain exceptions not applicable here, a cause of action for damages is community property, as is any recovery on that cause of action."). The Court is not convinced Ross's community property interest in Operstein's future salary is sufficient to confer standing.

Ross's statement that he claims to be "seeking" a position at CSU is not sufficient either. Where a plaintiff relies on threatened future injury, the "'threatened injury must be *certainly impending* to constitute injury in fact.'" *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (citations omitted) (emphasis in original). "'Allegations of *possible* future injury' are not sufficient." *Id.* Ross provides no details concerning his alleged aspirations for future employment at CSU: he fails to allege he submitted any applications, that there are open positions to pursue, or other indicia that the policy would have anything other than a remote possibility of affecting

him. These vague allegations of potential future harm are not sufficient. *Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 656 (9th Cir. 2002) (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983)) ("A plaintiff may allege future injury in order to comply with [the case or controversy requirement], but only if he or she 'is *immediately* in danger of sustaining some *direct* injury as the result of the challenged official conduct and the injury or threat of injury is both real and immediate, not conjectural or hypothetical.'").

Furthermore, there are no allegations that Ross's civil rights were violated in relation to Operstein's terminated employment. He was never employed by CSU, and all of the allegations of the SAC relate to Operstein's civil rights. He improperly seeks to recover for legal wrongs allegedly inflicted on Operstein. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("By particularized, we mean that the injury must affect the plaintiff in a personal and individual way."). Accordingly, the Court **GRANTS** Defendants' Motion, and **DISMISSES** Ross's claims because he does not have standing.

Ross has already amended his complaint twice, with the benefit of having seen Defendants' standing arguments in their prior motions to dismiss. The Court does not grant leave to amend because amendment would be futile. *See Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B.    Eleventh Amendment**

Majority Defendants argue that they are immune from suit because they are extensions of the state. The Eleventh Amendment bars suits against state officials in their official capacity. The bar to jurisdiction imposed by the Eleventh Amendment also applies to cases premised on federal questions and injunctions against state officials. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Cory v. White*, 457 U.S. 85, 91 (1982); *Greater Los Angeles Council on Deafness, Inc. v. Zolin*, 812 F.2d 1103, 1110 (9th Cir. 1987). An official capacity suit is, in all respects other than name, to be treated as a suit against the state. *See Hafer v. Melo*, 502 U.S.

21, 25, (1991) (citing *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)). CSU is an arm of the state and therefore the individual defendants are immune from suit under the Eleventh Amendment. *Stanley v. Trustees of the California State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (noting that the Ninth Circuit has previously held that the Trustees of California State University "are an arm of the state that can properly lay claim to sovereign immunity"). Section 1981 and 1985(3) claims may also be barred by the Eleventh Amendment. *See Cerrato v. S.F. Cmty. College Dist.*, 26 F.3d 968, 972, 976 (9th Cir. 1994); *Elmatboly v. Ariz. State Univ.*, 297 F. App'x 654, 654 (9th Cir. 2008).

The Eleventh Amendment bars any action in federal court against a State, an "arm of the State," its instrumentalities, or its agencies, regardless of whether the plaintiff seeks damages or injunctive relief. *Franceschi v. Schwartz*, 57 F.3d 828, 831 (9th Cir. 1995) (per curiam); *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) ("This jurisdictional bar applies regardless of the nature of the relief sought"); *Yakama Indian Nation v. Washington Dep't of Revenue*, 176 F.3d 1241, 1245 (9th Cir. 1999) (holding Eleventh Amendment immunity can extend to actions for declaratory and injunctive relief). However, claims against individuals in their official capacities can proceed, despite the Eleventh Amendment, where a plaintiff seeks *prospective* injunctive relief. *Ex parte Young*, 209 U.S. 123, 156–57 (1908).

Here, Plaintiffs assert claims against Edmund G. Brown, Timothy P. White, Gavin Newsom, Anthony Rendon, Tom Torlakson, Lou Monville, Rebecca D. Eisen, Steve, Relyea, Silas Abrego, Jane W. Carney, Adam Day, Douglas Faigin, Debra S. Farar, Jean P. Firstenberg, Lillian Kimbell, Thelma Melendez de Santa Ana, Hugo N. Morales, John Nilon, J. Norton Lawrence Norton, Lateefah Simon, Stepanek, Peter J. Taylor, Lupe Garcia, Framroze Virjee, and Mildred Garcia in both their official and personal capacities. (SAC ¶ 44.) To the extent Plaintiffs seek retrospective relief, in the form of damages for past wrongs against these defendants in their official

capacities, their claims are barred by the Eleventh Amendment.  Accordingly, the Court **GRANTS**, in part, Defendants' Motion to Dismiss these claims.  *Pittman v. Oregon, Employment Dept.*, 509 F.3d 1065, 1071 (9th Cir. 2007).

*Ex parte Young* provides a small exception to the Eleventh Amendment.  209 U.S. at 156–57.  The rule from *Young* allows suits to proceed against state officials, despite the Eleventh Amendment, where the plaintiff seeks "prospective injunctive relief against state officials acting in their official capacity."  *Pittman*, 509 F.3d at 1071.  Plaintiffs argue they assert claims for prospective relief because "the ethnic cleansing/Hispanization policy conducted by defendants is ongoing…."  (Opp'n 20, ECF No. 104.)  Ross alleges that he is "seeking academic positions at CSU and CSUF…," and will be prevented from pursuing these positions because of CSU's unconstitutional policies.  (SAC ¶ 43.)  As noted above, Ross's claim is speculative and is not sufficient to confer standing.

Operstein seeks "a permanent injunction enjoining the Hispanization/Ethnic Change Policy at CSU and CSUF," and a declaration that the policy is unconstitutional.  (*Id.* at 45.)  In Reply, Defendants argue that CSU is not a party to this suit, and therefore this request for injunctive relief is misplaced.  (Reply 7, ECF No. 7.)  The Court construes the SAC liberally in light of the procedural posture of the case, and Plaintiffs' pro se status, and finds that Operstein sufficiently requests a prospective injunction.  *C.f. Haines v. Kerner*, 404 U.S. 519, 596 (1972) (noting that pro se pleadings are held to "less stringent standards than formal pleadings drafted by lawyers….").  At this stage of the proceedings, these allegations are sufficient to escape dismissal under the Eleventh Amendment.  *See Pittman*, 509 F.3d at 1071.  Thus, as against the Majority Defendants in their official capacities, only Plaintiffs' claims for prospective, injunctive relief survive.  The Court addresses claims against these defendants in their individual capacities below.

**C.     Claims against Becerra Defendants**

With respect to the Becerra and Frater, they argue that they are absolutely

immune from suit, as government attorneys. (Becerra Mot. 12.) An attorney general or deputy attorney general has absolute immunity, except they "are not immune from any actions that are wholly unrelated to or outside of their official duties." *Bly-Magee v. California*, 236 F.3d 1014, 1016 (9th Cir. 2001); *see also Fry v. Melaragno*, 939 F.2d 832, 837 (9th Cir. 1991) (government lawyers absolutely immune for actions "intimately" or "closely" associated with judicial process). "Whether the government attorney is representing the plaintiff or the defendant, or is conducting a civil trial, criminal prosecution or agency hearing, absolute immunity is necessary to assure that . . . advocates . . . can perform their respective functions without harassment or intimidation." *Fry*, 939 F.2d at 837 (citation omitted). Here, Plaintiffs' claims against Becerra and Frater are directly related to their representation of defendants in this action, and the defendants in Plaintiffs' concurrent state-court action. (*See* SAC ¶¶ 33, 35.) Plaintiffs' claims rely on their theory that the Becerra Defendants conspired to prevent Plaintiffs access to the courts. (*See id.*) Accordingly, the Court **DISMISSES** Plaintiffs' claims against Becerra and Frater, with prejudice.

Graboyes is similarly immune from suit on the conspiracy claim. "The *Noerr-Pennington* doctrine ensures that those who petition the government for redress of grievances remain immune from liability for statutory violations, notwithstanding the fact that their activity might otherwise be proscribed by the statute involved." *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (citing *Prof'l Real Estate Inv'rs, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)). *Noerr-Pennington* protection applies to citizens' use of the courts. *See Prof'l Real Estate Inv'rs, Inc.*, 508 U.S. at 56-57. Although *Noerr-Pennington* first arose in the antitrust context, it now applies to litigation in all contexts. *White*, 227 F.3d at 1231. Plaintiffs premise their claims against Graboyes on her "signing perjuriously declarations which were filed with the state and federal courts." (SAC ¶ 31.)

Plaintiffs argue that the sham exception to *Noerr-Pennington* applies. However, "[t]he sham exception applies when a defendant uses government processes,

as opposed to the outcome of those processes, as a mechanism to injure plaintiffs." *Comm. to Protect Our Agric. Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1155 (E.D. Cal. 2017) (citing *Empress LLC v. City & Cty. of San Francisco*, 419 F.3d 1052, 1057 (9th Cir. 2005)). Graboyes' declarations were submitted in response to lawsuits filed by Plaintiffs. Thus, Plaintiffs do not complain of Graboyes abusing a mechanism of the judicial process by, for example, filing multiple frivolous, and baseless lawsuits; rather, they take issue with the outcome of the processes. (*See* SAC ¶¶ 38, 64.) Accordingly, the Court **GRANTS** the Becerra Defendants' Motion, and **DISMISSES** Plaintiffs' claims against Graboyes, with prejudice.

## D. Qualified Immunity

Majority Defendants argue they are entitled to qualified immunity. Qualified immunity is an affirmative defense that shields from liability government officials whose "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). This immunity is granted broadly and "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Moran v. State of Washington*, 147 F.3d 839, 844 (9th Cir. 1998) (quoting *Malley v. Briggs*, 475 U.S. 335 (1986)) (internal quotation marks omitted). When conducting the qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)).

Majority Defendants argue that Operstein cannot show that she had a clearly established constitutional right to tenure at the time she was fired. (Reply 8, ECF No. 112.) "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. [She] must have more than a unilateral expectation of it. [She] must, instead, have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 578 (1972). Defendants argue that Operstein

had no entitlement to continued employment because she was merely "seeking tenure." (Mot. 18, ECF No. 88.) However, Operstein alleges:

> [She] was employed by CSU at the CSUF campus as a faculty under a lifetime contract, subject to certain performance-related cumulative covenants to be met during the period 2011–2016. … By 2013, Dr. Operstein had fulfilled and exceeded the substantive contractual performance requirements of all said covenants, and her rights to the lifetime contract became vested. By Fall 2014, Dr. Operstein had fulfilled and substantially exceeded the contractual performance requirements of all said covenants.

(SAC ¶ 41.) While, according to Defendants, this may not be factually accurate, at this juncture, the Court is required to take Operstein's allegations as true, and to draw reasonable inferences in her favor. Thus, she alleges that she had more than a unilateral expectation of continued employment because she claims she achieved the benchmarks necessary to maintain her lifetime contract. She has sufficiently alleged a Fourteenth Amendment claim for violation of her due process rights, such as to preclude qualified immunity at this point. Accordingly, the Court **DENIES** Majority Defendants' Motion as it pertains to qualified immunity, and Operstein's claims relating to the termination of her alleged tenured position against the Majority Defendants in their personal capacities survive.

If, on summary judgment, Defendants are able to produce unrebutted evidence that Operstein was not entitled to continued employment, or did not meet the necessary qualifications, they can raise this argument then.

**E.      Majority Defendants' Claim-Specific Arguments**

Majority Defendants also argue that Plaintiffs fail to state claims under Section 1983 because Majority Defendants are not "persons" or "state actors" under the meaning of the statute. (Mot. 21–22, ECF No. 88.)

*1.      Whether Defendants Are "Persons"*

A state is not a "person" under Section 1983. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65–66 (1989); *see also Carmen v. San Francisco Unified Sch.*

*Dist.*, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997); *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 254 (9th Cir. 1992).  Thus, actions for retrospective relief against the state officials in their official capacities are barred, as discussed above in the Court's Eleventh Amendment discussion.  While not mentioned by Majority Defendants in their briefing, the Supreme Court in *Will* carved out an exception for officials sued for prospective relief.[8]  *Will*, 491 U.S. at 71 (quoting *Kentucky*, 473 U.S. at 167 n.14 ("Of course a state official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.'")).  As discussed above, Plaintiffs' claims for retrospective relief against Defendants in their official capacities are barred, but Operstein's claim for prospective injunctive relief survives.

> 2.    *Whether Defendants Are "State Actors"*

Majority Defendants argue that "Plaintiff has failed to allege specific facts establishing everyone from the Governor to the individual professors engaged in conduct 'under the color of state law.'"  (Mot. 22, ECF No. 88.)  Yet, in the next breath, they state that "Defendants are accused of acts by Plaintiffs which merely constitute an adverse employment action."  (*Id.*)  Defendants were employed by, or on the board of trustees for, CSU, which is a state-run entity, and has been held an arm of the state.  *See Stanley*, 433 F.3d at 1133.  Operstein does not allege that Defendants were acting outside the scope of their duties, and thus her claims sufficiently allege Defendants were acting "under the color of state law."  The Court does not find this argument persuasive.  *See, e.g., Gorenc v. Salt River Project Agr. Imp. & Power Dist.*, 869 F.2d 503, 505–06 (9th Cir. 1989) (discussing analysis of state actor requirement vis-a-vis the Fourteenth Amendment).

---

[8] Defendants fail to address the exception for prospective injunctive relief in their brief.  The Court takes this opportunity to remind defense counsel of their duty of candor to the Court.

### 3. *Plaintiffs' Claims under Section 1985 & 1986 Fail*

Plaintiffs allege that several defendants conspired to prevent them access to the courts. (*See, e.g.*, SAC ¶ 53.) Section 1985 prohibits conspiracy to interfere with civil rights by, among other things, (1) obstructing justice or intimidating a party, witness or juror; or (2) depriving a person of equal privileges and immunities under the law.

To the extent Operstein's employment discrimination claim is based in any way on Title VII, it is barred. *Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366, 378 (1979) ("[W]e conclude that § 1985(3) may not be invoked to redress violations of Title VII.").

To the extent her claims are based on an alleged conspiracy between the Becerra Defendants, she fails to state a claim because her claims are barred, as set forth above, and on the additional ground that she fails to allege a conspiracy between any defendants with any factual detail. She is required to "state specific facts to support the existence of the claimed conspiracy…." *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. Cty. of King*, 883 F.2d 819, 821 (9th Cir. 1989)). Operstein pleads no facts that indicate any discussion or agreement between the allegedly conspiring parties. (*See, e.g.*, SAC ¶ 81 ("Conspirators have been, and are being, engaged in the conspiracy to dismiss all plaintiffs' actions in federal and state courts….").) Plaintiffs' Section 1986 claim is wholly dependent on a Section 1985 claim. *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 625 (9th Cir. 1988). Accordingly, the Court **DISMISSES** Plaintiffs' claims under Sections 1985 and 1986, which are based on the access-to-the-courts conspiracy.

While leave to amend is generally granted freely, the Court cannot envision any set of facts that Plaintiffs could plead that would save their claims. Furthermore, Plaintiffs have already amended their complaint twice. Accordingly, the Court does not grant Plaintiffs leave to amend these claims.

**VI. CONCLUSION**

For the reasons set forth above, the Court **GRANTS** the Becerra Defendants' Motion to Dismiss with prejudice. (ECF No. 119.) The Court **DENIES**, as moot, the Becerra Defendants' Motion to Dismiss directed at the FAC. (ECF No. 89.)

The Court **GRANTS, IN PART**, the Majority Defendants' Motion to Dismiss. (ECF No. 87) Operstein may proceed on her Section 1983 claims, to the extent set forth in detail above. Specifically, her claims survive for: 1) violation of her constitutional rights as it relates to Majority Defendants, in their personal and official capacities, terminating Operstein's employment despite her alleged lifetime contract and vested right to tenure; and 2) prospective injunctive relief against the Majority Defendants in their official capacities.

The Court **DISMISSES** Ross with prejudice because he does not have standing.

**IT IS SO ORDERED.**

April 20, 2018

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**