# United States District Court
# Central District of California

| | |
|---|---|
| CRAIG ROSS; NATALIE OPERSTEIN, <br><br> Plaintiffs, <br><br> v. <br><br> P. TIMOTHY WHITE, et al., <br><br> Defendants. | Case № 2:17-cv-04149-ODW-JC <br><br> **ORDER GRANTING DEFENDANTS' MOTION TO DISMISS [220] AND DENYING SECOND MOTION TO STRIKE AFFIRMATIVE DEFENSES [237]** |

## I. INTRODUCTION & PROCEDURAL BACKGROUND

Plaintiff Natalie Operstein sued over 50 defendants (collectively "Defendants") alleging several causes of action under the United States Constitution and federal law. (Compl., ECF No. 1; First Am. Compl. ("FAC"), ECF No. 68; Second Am. Compl. ("SAC"), ECF No. 102.) Operstein's claims stem from California State University ("CSU") denying her a tenured position at CSU Fullerton ("CSUF"). She alleges Defendants violated her civil rights and conspired to terminate her employment, deny her tenure, and prevent her access to the courts.

The Court currently considers two motions involving different defendants. First, two defendants, Viramontes and Ramos (collectively, "EEOC Defendants"), move to dismiss Operstein's claims as to them pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that the Court lacks subject matter jurisdiction and Operstein fails to state a claim. (Mot. to Dismiss ("Mot."), ECF No. 220.) Second, Operstein moves to strike Majority Defendants'[1] affirmative defenses in their First Amended Answer to Operstein's SAC. (Second Mot. to Strike[2] ("MTS"), ECF No. 237.) Upon consideration of the papers and the hearing held on September 24, 2018, and for the reasons discussed below, the **Court GRANTS** EEOC Defendants' Motion to Dismiss **WITHOUT** leave to amend (ECF No. 220) and **DENIES** Operstein's Second Motion to Strike Majority Defendants' Affirmative Defenses (ECF No. 237).

## I. BACKGROUND

Natalie Operstein was a professor at CSUF from approximately 2011 to 2016. Most of her claims derive from CSUF's decision not to promote her to a tenured position.[3] She alleges that various defendants "introduced an official ethnic change

---

[1] The "Majority Defendants" include various CSU employees and members of the Board of Trustees, among others, and have been previously defined to include Timothy P. White, Silas Abrego, John Beisner, Emily Bonney, Edmund G. Brown, Jr., James Busalacchi, Jane W. Carney, Jose Luis Cruz, Lana Dalley, Adam Day, Rebecca D. Eisen, Douglas Faigin, Debra S. Farar, Jean P. Firstenberg, Sheryl Fontaine, Jacqueline Frost, Juan Carlos Gallego, Lupe Garcia, Mildred Garcia, Lori Gentles, Shahin Ghazanshahi, Kristi Kanel, Lillian Kimbell, Judy King, Robert Koch, John Koegel, Philip Lee, Michael Loverude, Thelma Melendrez de Santa Ana, Stephen Mexal, Lou Monville, Hugo N. Morales, Franz Mueller, Gavin Newsom, John Nilon, Kim Norman, J. Lawrence Norton, Barry Pasternack, Steve Relyea, Colleen Regan, Anthony Rendon, Jill Rosenbaum, Patricia Schneider-Zioga, Monique Shay, Lateefah Simon, Steven Stepanek, Peter J. Taylor, Tom Torlakson, Ofir Turel, Framroze Virjee, and Angela Della Volpe.

[2] Operstein previously filed a Motion to Strike Majority Defendants' Answer or Affirmative Defenses, discussed below. (*See* ECF No. 165.) For clarity, "First MTS" refers to Operstein's previous Motion to Strike and "Second MTS" refers to Operstein's presently pending Motion to Strike.

[3] The Court dismissed Ross, Operstein's husband, for lack of standing on April 20, 2018, and entered partial judgment as to him on June 12, 2018. (Order Granting, In Part, Defs.' Mot. to Dismiss ("MTD Order"), ECF No. 146; Partial J., ECF No. 186.) He appealed both the Order and

policy and strategic goal to make Hispanics the majority among faculty, administrators and staff at the CSUF campus." (SAC ¶ 42.) Operstein claims monetary damages for past harm, future lost earnings and fringe benefits, as well as injunctive relief preventing Defendants from continuing to implement the ethnic change policy. (*See id.* pp. 45–46.) She alleges Defendants conspired to terminate her employment, deny her tenure, and prevent her access to the courts. Operstein sues more than 50 government actors at varying levels, and from various branches of the state and federal government, in their official and personal capacities.

Operstein has amended her complaint twice in response to motions to dismiss from various defendants. (*See* FAC; SAC.) On April 20, 2018, the Court dismissed all of Operstein's claims against Becerra Defendants[4] with prejudice. (MTD Order 17.) The Court also dismissed, in part, her claims against Majority Defendants, without leave to amend. (*Id.*) As to Majority Defendants, the Court clarified that Operstein may proceed on her § 1983 claims, specifically as to: (1) "violation of her constitutional rights as it relates to Majority Defendants, in their personal and official capacities, terminating Operstein's employment despite her alleged lifetime contract and vested right to tenure; and" (2) "prospective injunctive relief against the Majority Defendants in their official capacities." (*Id.*) On June 12, 2018, the Court denied Operstein's Motion for Reconsideration. (Order Denying Mot. For Recons., ECF No. 185.)

Following the Court's Order, Majority Defendants Answered Operstein's SAC. (ECF No. 148.) Operstein moved to strike Majority Defendants' Answer or alternatively all of their affirmative defenses. (First MTS, ECF No. 165.) The Court granted, in part, Operstein's motion as to affirmative defenses, with leave to Majority

---

the Judgment. (Notice of Appeal, ECF No. 218.) This litigation proceeds with Operstein as the only Plaintiff.

[4] The "Becerra Defendants" have been previously defined to include Xavier Becerra, Elizabeth Frater, and Robin Grayboyes.

Defendants to amend. (Order First MTS, ECF No. 219.) Majority Defendants did so in their First Amended Answer. (ECF No. 226.)

Throughout this case, Majority Defendants suspected Ross had been acting on Operstein's behalf, including after he was dismissed for lack of standing, despite not being an attorney. Consequently, on June 28, 2018, the Court granted Majority Defendants' ex parte application for an in-person Rule 26(f) conference and warned Ross explicitly that he may not represent Operstein or otherwise participate in this litigation; the prohibition included communicating on her behalf. (Ex Parte Order 5, ECF No. 210.)[5]

The Court now considers two motions involving different groups of defendants. First, EEOC Defendants, who have not previously appeared in this matter, move to dismiss Operstein's SAC for lack of subject matter jurisdiction and failure to state a claim. (ECF No. 220.) Second, Operstein moves to strike Majority Defendants' affirmative defenses. (ECF No. 237.) The Court addresses each motion in turn.

## II. EEOC DEFENDANTS' MOTION TO DISMISS [220]

EEOC Defendants move to dismiss Operstein's SAC, arguing: (1) the Court lacks subject matter jurisdiction to the extent Operstein's claims are based in negligence; (2) *Bivens* liability is unavailable; (3) EEOC Defendants are entitled to Qualified Immunity; and (4) Operstein fails to sufficiently allege facts to state claims. For the reasons discussed below, the Court **GRANTS** EEOC Defendants' Motion to Dismiss without leave to amend.

### A. Legal Standard 12(b)(6)

A court may dismiss a complaint under Rule 12(b)(6) for lack of a cognizable legal theory or insufficient facts pleaded to support an otherwise cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). To survive a motion to dismiss, a complaint need only satisfy the minimal notice pleading

---

[5] The Court has also ruled on many ex parte applications filed by Plaintiffs and referred several motions to disqualify judges in this district, pursuant to the Court's General Order. (*See, e.g.*, Referral Order, ECF No. 11.) All motions to disqualify have been denied.

requirements of Rule 8(a)(2)—a short and plain statement of the claim. *Porter v. Jones*, 319 F.3d 483, 494 (9th Cir. 2003). The factual "allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). That is, the complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). These factual allegations must provide "fair notice and . . . enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011).

The determination of whether a complaint satisfies the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A court is generally limited to the pleadings and must construe all "factual allegations set forth in the complaint . . . as true and . . . in the light most favorable" to the plaintiff. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted). But a court need not blindly accept conclusory allegations, "unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). Although pro se pleadings are to be construed liberally, a plaintiff must present factual allegations sufficient to state a plausible claim for relief. *See Hebbe v. Pliler*, 627 F.3d 338, 341 (9th Cir. 2010.) A liberal reading cannot cure the absence of such facts. *Ivey v. Bd. of Regents of Univ. Alaska*, 673 F.2d 266, 268 (9th Cir. 1982.)

**B.     Analysis**

Operstein brings claims under 42 U.S.C. §§ 1981, 1983, 1985, 1986; *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388 (1971); and the First, Fifth, and Fourteenth Amendments to the United States Constitution. (SAC p. 23.) She seeks monetary damages from EEOC Defendants Viramontes and Ramos in their personal capacities. (*Id.*; *id.* ¶¶ 28, 29.)

As to Defendant Viramontes, Operstein alleges she "is Director of EEOC's Los Angeles District Office" and is sued for:

> [1] conspiracy or failure to prevent conspiracy with the State of California to shield the CSU ethnic change policy from EEOC investigation, [2] conspiracy and/or failure to prevent conspiracy with state officials to deny [P]laintiff[']s access to courts and to deprive [P]laintiff Operstein from contractual benefits in relation with her EEOC claim and request to file temporary injuction based on her claims, [3] mishandling of [P]laintiff Operstein's EEOC claims and [4] denial to her of equal protection in relation with her EEOC claim.

(SAC ¶ 28.)

As to Defendant Ramos, Operstein alleges she "is an investigator in EEOC's Los Angeles District Office" and is sued for "mishandling of [P]laintiff Operstein's EEOC claims." (SAC ¶ 29.)

In Operstein's 47-page SAC, she alleges nothing more than these two paragraphs as to EEOC Defendants. These two paragraphs consist of conclusory allegations requiring unsupported and unreasonable inferences. Operstein alleges no facts as to how EEOC Defendants conspired with any other defendants, how they mishandled her EEOC claim, or what actions they took in the process of denying her equal protection in relation to it. Although she mentions her participation in an EEOC claim as a reason other defendants allegedly conspired and retaliated against her, she fails to provide any factual support to her allegations against EEOC Defendants. This is not sufficient to raise the possibility of a right to relief above a speculative level.

Even construing Operstein's SAC liberally, her allegations fall short. Operstein mentions her EEOC claim in paragraphs 8, 42, 48, 51, 53, and 58, referring to the defendants' alleged conspiracies to retaliate against her or prevent her access to the courts. (*See, e.g.*, *id.* ¶ 42 (alleging Defendant Garcia terminated Operstein's employment, in part, in retaliation for Operstein's "participation in EEOC proceedings"); *id.* ¶ 53 ("The conspiracy also interfered with [P]laintiff[']s right to equal protection by EEOC in relation with the processing of [P]laintiff Operstein's

EEOC claims.").) Further, construing vague references to "defendants" as implying allegations specifically against EEOC Defendants (*see* SAC ¶¶ 42, 44, 47, 48, 53) merely identifies additional conclusory allegations of conspiracy. (*See id.* ¶ 44 ("defendants conspired or neglected to prevent the conspiracy to deprive . . . Dr. Operstein of her constitutional rights . . . her federal rights [and] her property and liberty to pursue her chosen profession.").) Even this generous reading fails because these references surround Operstein's claims of conspiracy, which she fails to allege with any factual detail.

As the Court previously found in its Order dismissing the conspiracy claims against Majority Defendants (MTD Order 16), Operstein also fails to state a claim against EEOC Defendants because she fails to allege a conspiracy between *any* defendants with any factual detail. A plaintiff is required to "state specific facts to support the existence of the claimed conspiracy." *Olsen v. Idaho St. Bd. of Med.*, 363 F.3d 916, 929 (9th Cir. 2004) (quoting *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989)); *Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 626 (9th Cir. 1988) (finding that "mere allegation of conspiracy without factual specificity is insufficient" to withstand motion to dismiss). But Operstein's SAC is devoid of any facts that indicate any discussion or agreement between the allegedly conspiring parties. Consequently, even the most generous reading of Operstein's SAC cannot cure the absence of sufficient factual allegations.

Accordingly, the Court **GRANTS** EEOC Defendants' Motion to Dismiss the SAC.

### C. Leave to Amend

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). A court may deny leave to amend when it "determines that the allegation of other facts consistent with the challenged pleading could not

possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City and County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

Here, amendment would be futile. The Court construes the SAC liberally in light of the procedural posture of the case and Operstein's pro se status. Due to the dearth of allegations against EEOC Defendants, the Court considers the legal bases plausibly raised in the SAC. Even so, the Court finds no support for Operstein's claims against EEOC Defendants. In her opposition, Operstein requests leave to amend, but proposes the addition of only further conclusory and unsupported inferences. Notably, Operstein previously amended her complaint twice in response to various motions to dismiss. Accordingly, the Court finds that "the allegation of other facts consistent with the [SAC] could not possibly cure the deficiency." *Schreiber*, 806 F.2d at 1401.

### 1. *Statutory claims under 42 U.S.C. §§ 1985 & 1985*

To the extent Operstein alleges EEOC Defendants violated 42 U.S.C. §§ 1985 and 1986 by conspiring with Becerra Defendants or Majority Defendants, these claims fail. Section 1985 prohibits conspiracy to interfere with certain civil rights. A § 1986 claim is wholly dependent on a § 1985 claim. *Karim-Panahi*, 839 F.2d at 626. The Court dismissed Operstein's claims against Becerra Defendants with prejudice and dismissed Operstein's conspiracy claims against Majority Defendants without leave to amend. (MTD Order 17.) In addition to the resulting lack of co-conspirators, as stated previously, "the Court cannot envision any set of facts that Plaintiff[] could plead that would save" her section 1985 and 1986 claims. (*Id.* at 16.) Accordingly, the Court finds amendment of these claims would be futile.

### 2. *Statutory claims under 42 U.S.C. §§ 1981 & 1983*

To the extent Operstein alleges EEOC Defendants violated 42 U.S.C. §§ 1981 and 1983, these claims fail. EEOC Defendants are federal, not state, employees. The

plain language of 42 U.S.C. §§ 1981 and 1983 does not permit actions against federal employees acting under federal law. Accordingly, the Court finds that amendment of these claims would be futile.

>   3.   Bivens *claims under the First, Fifth, and Fourteenth Amendments to the Constitution*

To the extent Operstein alleges constitutional violations under *Bivens*, her claims arise in a new context not previously recognized by the Supreme Court and the availability of alternative remedies precludes relief. Thus, these claims fail.

A *Bivens* claim is an "implied right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Vega v. United States*, 881 F.3d 1146, 1152 (9th Cir. 2018) (discussing *Bivens*, 403 U.S. 388). The Supreme Court has increasingly restricted *Bivens* claims, such that they are now available only in very limited contexts. *See Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 67–68 (2001) ("Since *Carlson* [*v. Green*,] we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."); *ibid.* (discussing the three recognized contexts for *Bivens* claims as (1) Fourth Amendment claim for police search and seizure in *Bivens*, 403 U.S. 388, (2) Fifth Amendment claim for gender discrimination where the plaintiff was explicitly excluded from alternative remedies in *Davis v. Passman*, 442 U.S. 228 (1978), and (3) Eighth Amendment claim for deliberate indifference toward a prisoner's medical needs in *Carlson*, 446 U.S. 14 (1980).). The Supreme Court has "made clear that expanding the *Bivens* remedy is now a disfavored judicial activity." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1857 (2017) (internal quotation marks omitted).

As such, relief under *Bivens* is not available when (1) the claim arises in a new context than those previously recognized by the Supreme Court, and (2) special factors, including alternative remedies, counsel judicial hesitation. *See Vega*, 881 F.3d at 1153–54 (quoting *Abbasi*, 137 S. Ct. at 1858) ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the

Judiciary to infer a new *Bivens* cause of action."); *see also Bush v. Lucas*, 462 U.S. 367, 386–90 (1983) (finding that, even assuming rights have been violated and other remedies were not as effective, the existence of a comprehensive remedy scheme precludes *Bivens* relief).

Operstein seeks *Bivens* relief under the First, Fifth, and Fourteenth[6] Amendments (*see* SAC p. 23) and claims EEOC Defendants mishandled her EEOC claim and denied her equal protection in relation to it (SAC ¶¶ 28, 29). Even assuming Operstein could allege additional facts against EEOC Defendants, these claims arise in a new context than those previously recognized by the Supreme Court. Further, "Congress intended that the private right of action preserved by [Title VII] be the all-purpose remedy for charging parties dissatisfied with the EEOC's handling of their charge." *Ward v. E.E.O.C.*, 719 F.2d 311, 313 (9th Cir. 1983) (quoting *Hall v. E.E.O.C.*, 456 F. Supp. 695, 698–700 (N.D. Cal. 1978). Operstein's claims against EEOC Defendants stem from her dissatisfaction with EEOC's handling of her EEOC claim. Thus, her "all-purpose remedy" is to sue the discriminating employer directly, which she has done.

Because Operstein's claims arise in a new context and alternative remedies exist, *Bivens* relief is unavailable. Accordingly, the Court finds amendment of these claims would be futile.

### 4. "Mishandling" EEOC claim allegations

Finally, to the extent Operstein alleges EEOC Defendants "mishandled" her EEOC claim, these claims fail. The Federal Tort Claims Act ("FTCA") is the only remedy for tortious conduct by the United States and only the United States may be sued under it. *F.D.I.C. v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998). The United States would be the proper defendant, not EEOC Defendants in their individual capacities.

---

[6] Operstein's Fourteenth Amendment claim is properly construed as coming under the Fifth Amendment, as EEOC Defendants are federal employees who acted under federal law. *See Davis v. Passman*, 442 U.S. 228, 230 (1978); *see also Bolling v. Sharpe*, 347 U.S. 497, 500 (1954).

Further, the FTCA provides jurisdiction for tort suits against the government only when a plaintiff has fully exhausted her administrative remedies. *D.L. v. Vassilev*, 858 F.3d 1242, 1244 (9th Cir. 2017). EEOC Defendants presented evidence that Operstein had not filed an administrative claim against EEOC, and Operstein did not refute that evidence.[7] (*See* Decl. of Anita Washington ¶¶ 3–4, ECF No. 220-1.) Accordingly, the Court finds amendment of these claims would be futile.

Operstein, through her SAC, fails to state a plausible claim for relief against EEOC Defendants. Because she has already amended twice, and because further amendment would be futile, the Court **GRANTS** EEOC Defendants' Motion to Dismiss Operstein's SAC **WITHOUT** leave to amend.

### III. PLAINTIFF'S MOTION TO STRIKE MAJORITY DEFENDANTS' AFFIRMATIVE DEFENSES [237]

Turning to the second motion at issue, Operstein moves to strike Majority Defendants' Affirmative Defenses in their First Amended Answer.

<u>Previous Motion to Strike</u>: The Majority Defendants previously answered Operstein's SAC and asserted twelve affirmative defenses. (Answer, ECF No. 148.) Operstein moved to strike Majority Defendants' entire Answer or alternatively all twelve affirmative defenses. (First MTS, ECF No. 165.) She failed to meet and confer in advance of her motion, as required by Local Rule 7-3. The Court declined to deny her motion on that basis alone but reminded Operstein of her "duty to comply with the Local Rules," warning that "failure to do so in the future will result in sanctions." (Order First MTS 3, ECF No. 219.) The Court granted Operstein's motion, in part. (*Id.* at 6.) The Court dismissed one affirmative defense without leave to amend as an improper attack on Operstein's prima facie case, but otherwise declined to consider the sufficiency of the remaining eleven affirmative defenses

---

[7] A court may dismiss a complaint for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1), and, "[i]n resolving a factual attack on jurisdiction . . . may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

because Majority Defendants acknowledged their deficiency. (*Id.*) The Court thus struck the remaining affirmative defenses with leave to amend. (*Id.*)

<u>Current Motion to Strike</u>: Following the Court's Order, Majority Defendants filed a First Amended Answer to Operstein's SAC and asserted ten affirmative defenses. (First Am. Answer, ECF No. 226.) Operstein again moves to strike all of Majority Defendants' affirmative defenses. (Second MTS, ECF No. 237.) Majority Defendants have withdrawn one affirmative defense and otherwise oppose Operstein's motion. (Opp'n Second MTS, ECF No. 240.) For the reasons discussed below, the Court **DENIES** Operstein's Motion to Strike.

## A. Local Rule 7-3

As with the previous motion to strike, Majority Defendants contend that Operstein failed to comply with Local Rule 7-3. (Opp'n Second MTS 7.)

### 1. "Meet and Confer" Dispute

On July 25, 2018, Operstein sent a detailed email to Counsel for Majority Defendants, informing them of her intent to move to strike all the affirmative defenses. (Second MTS 2, Ex. 2.) She sent the email using the email account "crgrss@icloud.com," which is listed as the email of record for *former-plaintiff Ross*, and which Ross also uses. (Decl. of Natalie Operstein in Supp. of Reply Second MTS ("Operstein Decl.") ¶ 4, ECF No. 243-1.) Majority Defendants responded to Operstein by emailing *Operstein's* email of record, natachanolco@gmail.com, and copying the sending account, crgrss@icloud.com. (Opp'n Second MTS 7.) They requested an in-person meeting to discuss Operstein's motion, but received no response. (*Id.* at 7–8.) Majority Defendants assert that they continue to be concerned that Ross is communicating on Operstein's behalf, despite the Court's June 28, 2018, Order. (*See* Ex Parte Order 5 (Ross "may not represent Operstein, or otherwise participate in this litigation on her behalf. This includes . . . communicating on her behalf with the Court or with Defendants.").) Majority Defendants requested the in-

person meeting to avoid either encouraging the unauthorized practice of law by Ross or violating the Court's June 28, 2018, Order. (Opp'n Second MTS 8.)

In her Reply, Operstein stated that the crgrss@icloud.com email account is the "Family Account," she prepared and sent the email, and the account displays a unique header with her name when an email comes from her. (Operstein Decl. ¶ 4, Ex. 1 (displaying "From: Natalie Operstein <crgrss@icloud.com>").) She asserts that the parties routinely correspond regarding this matter using this email account. (*Id.* ¶ 5.) She claims that she lacks the legal skills to meet with highly-trained attorneys, so in-person meetings are a "waste of time" because she needs more time to research and respond. (Reply Second MTS 13.) Finally, Operstein claims no requirement exists that they meet in person and Local Rule 7-3's preference for in-person conferences does not apply to her because she is pro se. (*Id.* at 12.)

2.  Analysis

Local Rule 7-3 requires counsel or parties contemplating motion practice to "contact opposing counsel to discuss thoroughly, preferably in person, the substance of the contemplated motion and *any potential resolution*." C.D. Cal. L.R. 7-3 (emphasis added). The purpose of Local Rule 7-3 is to attempt to resolve the issues necessitating motion practice. *See id.* It is within the Court's discretion to refuse to consider a motion based on a party's noncompliance with Local Rule 7-3. *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1088 (C.D. Cal. 2015). However, failure to comply with Local Rule 7-3 "does not automatically require the denial of a party's motion." *Id.*

The Court previously directed Operstein to comply with the Local Rules, specifically Local Rule 7-3, when she failed to meet and confer on her previous motion to strike. (*See* Order First MTS 3 (declining to deny Operstein's motion solely for her noncompliance, "the Court remind[ed] Operstein of her duty to comply with the Local Rules, and her failure to do so in the future will result in sanctions.").) Further, Magistrate Judge Choolijan made explicit that the Local Rules apply to

Operstein, notwithstanding her pro se status. (*See* Order Denying Motion for Protective Order Without Prejudice 1, ECF No. 213 (citing Local Rules 37-1 and 1-3 ("Persons appearing pro se are bound by these rules, and any reference in these rules to 'attorney' or 'counsel' applies to parties pro se unless the context requires otherwise.")).) Consequently, Operstein's claim that Local Rule 7-3's preference for in-person meetings does not apply to her is *unsupportable*, and she has actual knowledge of its application based on the previous order.

In any event, communication through letter or email may technically satisfy the meet and confer requirement. *See Colodney v. County of Riverside*, No. EDCV 13-00427-VAP (SPx), 2013 WL 12200649, at *4 (C.D. Cal. Aug. 16, 2013) ("Courts in this district have held that communication through letter may satisfy the meet and confer requirement of Rule 7-3."). However, Operstein's failure to respond to opposing counsel's request for further discussion does not demonstrate a good faith attempt to comply with the Rule's purpose, to "reach a resolution which eliminates the necessity for a hearing." C.D. Cal. L.R. 7-3. At this time, the Court declines to sanction Operstein, but explicitly reminds her that **the Local Rules, including Local Rule 7-3, apply to her, notwithstanding her pro se status; that Ross *may not assist her* or act on her behalf, including, but not limited to communications concerning this litigation; and that future failures to meet and confer *in good faith* may result in the Court requiring the parties to conduct all substantive conferences in-person or dismissal of her case with prejudice.**

**B.  Motion to Strike Affirmative Defenses**

Majority Defendants assert ten affirmative defenses in their First Amended Answer: (1) Statute of Limitations; (2) Unclean Hands; (3) After-Acquired Evidence; (4) Contributory Negligence/Comparative Fault; (5) Failure to Mitigate Damages; (6) Fault of Others; (7) Collateral Source; (8) Same Decision; (9) Qualified Immunity; and (10) Eleventh Amendment Immunity. (First Am. Answer ¶¶ 56–65.) Operstein moves to strike all ten as failing to provide fair notice, deficiently pled, or improperly

attacking her prima facie case. (Second MTS 4–5; Second MTS Reply 4–5, ECF No. 243.) She argues leave to amend should be denied and seeks sanctions. (Second MTS 13.)

In response, Majority Defendants provide a legal basis for the affirmative defenses and relate them to Operstein's potential claims for breach of contract and employment discrimination. (Opp'n Second MTS 9–11.) They assert each affirmative defense is sufficiently pled and provides Operstein with fair notice. (*Id.* at 11–14.) In addition, Majority Defendants withdraw the seventh affirmative defense, Collateral Source. (*Id.* at 14.) Should the Court find any of the remaining nine affirmative defenses lacking, Majority Defendants request leave to amend, to specifically reference Operstein's allegations. (*Id.* at 15.)

*1. 12(f) Legal Standard*

Under Federal Rule of Civil Procedure 12(f), "[a] Court may strike affirmative defenses . . . if they present an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." *Barnes v. AT & T Pension Ben. Plan-Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010) (internal quotation marks omitted) (citing Fed. R. Civ. P. 12(f)). Nevertheless, 12(f) motions are "generally regarded with disfavor because of the limited importance of pleading in federal practice, and because they are often used as a delaying tactic." *Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003). Thus, as long as the opposing party is not prejudiced, courts freely grant leave to amend stricken defenses. *Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979). "Ultimately, whether to . . . strike lies within the sound discretion of the district court." *Neilson*, 290 F. Supp. 2d at 1152.

Before a motion to strike affirmative defenses may be granted, the Court must be "convinced that there are no questions of fact, that any questions of law are clear and not in dispute, and that under no set of circumstances could the defense succeed." *Ganley v. County of San Mateo*, No. C06–3923-TEH, 2007 WL 902551, at *1 (N.D.

Cal. Mar. 22, 2007) (quoting *E.E.O.C. v. Interstate Hotels, LLC*, No. C04-04092, 2005 WL 885604, at *1 (N.D. Cal. Apr. 14, 2005)). An affirmative defense is insufficient as a matter of pleading when it fails to provide fair notice of the defense asserted. *Wyshak*, 607 F.2d at 827. "Fair notice generally requires that the defendant state the nature and grounds for the affirmative defense," but "a detailed statement of facts" is not required. *Kohler v. Staples the Office Superstore, LLC*, 291 F.R.D. 464, 468 (S.D. Cal. 2013).

The Court previously determined that it will apply the Rule 8 standard including *Twombly/Iqbal* to affirmative defenses. (Order First MTS 5); *see also Barnes*, 718 F. Supp. 2d at 1172. That means that a defendant provides fair notice by meeting the pleading standard of FRCP 8 as further refined by *Twombly*, 550 U.S. at 555 and *Iqbal*, 556 U.S. at 664. "Applying the standard for heightened pleading to affirmative defenses serves a valid purpose in requiring at least some valid factual basis for pleading an affirmative defense and not adding it to the case simply upon some conjecture that it may somehow apply." *Barnes*, 718 F. Supp. 2d at 1172 (quoting *Hayne v. Green Ford Sales, Inc.*, 263 F.R.D. 647, 650 (D. Kan. 2009)). A defendant need not provide extensive factual allegations but must nonetheless "include enough supporting information to be plausible." *MIC Prop. & Cas. Corp. v. Kennolyn Camps, Inc.*, No. 5:15-cv-00589-EJD, 2015 WL 4624119, at *2 (N.D. Cal. Aug. 3, 2015).

*2. Analysis*

To begin, Majority Defendants withdrew their seventh affirmative defense, Collateral Source. Thus, the Court does not consider that affirmative defense.

Operstein first argues that Majority Defendants' affirmative defenses improperly attack her prima facie case. She identifies Qualified Immunity and Eleventh Amendment (ninth and tenth affirmative defenses). An affirmative defense that "is merely [a] rebuttal against the evidence presented by the plaintiff" is improper. *Barnes*, 718 F. Supp. 2d at 1173; *see also Zivkovic v. Cal. Edison Co.*, 302 F.3d 1080,

1088 (9th Cir. 2002). "The purpose of an affirmative defense is to plead matters extraneous to the plaintiff's prima facie case, which deny plaintiff's right to recover, even if the allegations of the complaint are true.'" *MIC Prop.*, No. 5:15-cv-00589-EJD, 2015 WL 4624119, at *3 (internal quotation marks omitted).

The affirmative defenses of Qualified Immunity and Eleventh Amendment do not merely rebut evidence presented by the plaintiff, but instead operate as affirmative defenses, with the burden on the defendant, which could deny a plaintiff's right to recover even if all allegations in the complaint were true. *See Gomez v. Toledo*, 446 U.S. 635, 640 (1980) ("Since qualified immunity is a defense, the burden of pleading it rests with the defendant"); *Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144, 1147 (9th Cir. 2007) ("Eleventh Amendment immunity is an affirmative defense that must be raised early in the proceedings to provide fair warning to the plaintiff") (internal quotation marks omitted). As such, these are proper affirmative defenses.

Operstein's second, and primary, argument appears to be that Majority Defendants' affirmative defenses do not provide fair notice and fail to meet the pleading standard. Majority Defendants provide a legal basis for the affirmative defenses and relate them to Operstein's potential claims. They provide the nature and grounds for each asserted affirmative defense. (*See e.g.*, First Am. Answer ¶ 57 (Unclean Hands: "Plaintiff engaged in actions that violated the laws, regulations and policies applicable to her employment, and that said violations bar the complaint filed herein, and/or limit her remedies."); *id.* ¶ 63 (Same Decision: "Defendants are informed and believed and thereon allege that the adverse employment action, denial of tenure and termination would have been taken even in the absence of any constitutionally protected speech or conduct.").) A detailed statement of facts is not required at this stage. Majority Defendants have provided notice and reasoning sufficient to support the plausibility of their nine affirmative defenses relevant to the allegations in Operstein's SAC.

Accordingly, the Court finds Majority Defendants' remaining nine affirmative defenses sufficiently pled and **DENIES** Operstein's Motion to Strike Majority Defendants' Affirmative Defenses.

### IV. CONCLUSION

For the reasons set forth above, the Court **GRANTS** EEOC Defendants' Motion to Dismiss without leave to amend. (ECF No. 220.) The Court **DENIES** Operstein's Second Motion to Strike Majority Defendants' Affirmative Defenses. (ECF No. 237.)

**IT IS SO ORDERED.**

October 2, 2018

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**