# United States District Court
# Central District of California

| | |
|---|---|
| CRAIG ROSS; NATALIE OPERSTEIN, Plaintiffs, v. TIMOTHY P. WHITE, et al., Defendants. | Case № 2:17-cv-04149-ODW (JCx) **ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [265]** |

## I. INTRODUCTION

Plaintiff Natalie Operstein sued over 50 defendants alleging various causes of action under the U.S. Constitution and federal law. Operstein's claims stem from California State University ("CSU") denying Operstein a tenured position at CSU Fullerton ("CSUF"). The remaining Defendants[1] move for summary judgment

---

[1] The Court previously defined the remaining Defendants as "Majority Defendants," and they are Timothy P. White, Silas Abrego, John Beisner, Emily Bonney, Edmund G. Brown, Jr., James Busalacchi, Jane W. Carney, Jose Luis Cruz, Lana Dalley, Adam Day, Rebecca D. Eisen, Douglas Faigin, Debra S. Farar, Jean P. Firstenberg, Sheryl Fontaine, Jacqueline Frost, Juan Carlos Gallego, Lupe Garcia, Mildred Garcia, Lori Gentles, Shahin Ghazanshahi, Kristi Kanel, Lillian Kimbell, Judy King, Robert Koch, John Koegel, Philip Lee, Michael Loverude, Thelma Melendrez de Santa Ana, Stephen Mexal, Lou Monville, Hugo N. Morales, Franz Mueller, Gavin Newsom, John Nilon, Kim Norman, J. Lawrence Norton, Barry Pasternack, Steve Relyea, Colleen Regan, Anthony Rendon, Jill Rosenbaum, Patricia Schneider- Zioga, Monique Shay, Lateefah Simon, Steven Stepanek, Peter J.

("Motion") on Operstein's remaining claims: (1) violation of her Fourteenth Amendment due process right as it relates to Defendants in their personal and official capacities terminating Operstein's employment despite her alleged lifetime contract and vested right to tenure; and (2) prospective injunctive relief against Defendants in their official capacities regarding CSU's alleged "Hispanization" policy. For the reasons that follow, the Court **GRANTS** Defendants' Motion.

## II. BACKGROUND

### A. Factual Background

In June 2011, Dr. Natalie Operstein accepted a two-year, probationary appointment ("2011 Appointment") as a tenure-track full-time Assistant Professor. (Defs.' Statement of Uncontroverted Facts ("DSUF") 2–3, 9, 17, ECF No. 267; Decl. of Kristin K. Stang ("Stang Decl.") ¶ 3, Ex. 6 ("2011 Appointment"), ECF No. 268.) The 2011 Appointment included the possibility of reappointment to a third, fourth, fifth, or sixth probationary year, or the grant of tenure. (DSUF 21.) Reappointment was "contingent upon the outcome of performance reviews." (2011 Appointment 1.) According to the 2011 Appointment, "[t]enure track faculty are considered probationary faculty until they are awarded tenure or terminated." (2011 Appointment 1–2.)

Included with the 2011 Appointment was a copy of University Policy Statement 210.000 ("UPS"), which Operstein understood to be part of the offer and terms governing her employment. (DSUF 5.) UPS established the "policies and procedures that govern retention, promotion and granting of tenure (RTP) for probationary faculty." (DSUF 8; Decl. of Mark Schreiber ("Schreiber Decl.") ¶ 2, Ex. 35 ("UPS") 3–5, ECF No. 268.) The 2011 Appointment also noted that "[e]ach faculty member is bound by state regulations, system-wide trustee/chancellor directives, the collective bargaining agreement [("CBA")], and CSUF policies and procedures."

---

Taylor, Tom Torlakson, Ofir Turel, Framroze Virjee, and Angela Della Volpe. (*See* Order Granting, in Part, Defs.' Mots. to Dismiss ("MTD Order") 2 n.3, ECF No. 146.)

(2011 Appointment 1.) Operstein understood these regulations and documents governed her employment. (2011 Appointment 2; Schreiber Decl. ¶ 5, State Ct. Dep. of Operstein ("Operstein State Dep.") 32:8-11.)

In February 2013, Operstein accepted appointment to a third probationary year. (DSUF 23; Stang Decl. ¶ 7, Ex. 9 ("2013 Appointment").) She then applied for early tenure, but her application was rejected due to deficiencies in her portfolio and application. (Stang Decl. ¶ 8, Ex. 10 ("2014 Appointment") 1.) In June 2014, Operstein accepted appointment to a fourth probationary year. (DSUF 25; 2014 Appointment.)

The following year, Operstein again applied for early tenure. In June 2015, her application was denied and Operstein accepted reappointment to a terminal year, to end at the close of the 2015–2016 academic year. (*See* DSUF 26, 28; Stang Decl. ¶ 9, Ex. 21 ("2015 Terminal Appointment").) The 2015 Terminal Appointment provided several reasons for the denial, including portfolio deficiencies, lack of collegiality, and insufficient progress for reappointment to a fifth probationary year. (2015 Terminal Appointment 1.) The 2015 Terminal Appointment informed Operstein that "a probationary faculty member who receives a terminal year has *no further reappointment rights*." (2015 Terminal Appointment 2; DSUF 27 (emphasis added).) Operstein signed her acceptance of the terminal year appointment.[2] (2015 Terminal Appointment 2.) Following her terminal year, Operstein's employment at CSUF ended at the close of the 2015–2016 academic year. (DSUF 28.)

**B.  Procedural Background**

Following her termination, Operstein and her husband, Craig Ross, sued various entities and individuals in this and related state and federal actions. *See e.g.*, *Ross, et al. v. Bd. of Trs. of Cal. State Univ.*, Case No. SC12558 (Cal. Super. Ct. filed

---

[2] Operstein accepted the terminal year appointment "under protest and duress." (2015 Terminal Appointment 2.) However, she provides no evidence supporting duress at the time of accepting the appointment. Accordingly, the Court considers her signature as accepting the terminal appointment.

3

May 15, 2016); *Ross, et al. v. Bd. of Trs. of Cal. State Univ.*, Case No. 2:16-cv-3778-ODW (JCx) (C.D. Cal. filed May 31, 2016) ("*Ross I Federal Case*").

In this action, Operstein and Ross sued more than fifty various CSU employees and members of the Board of Trustees, among others, alleging civil rights violations deriving from CSUF's decision not to promote Operstein to a tenured position and its alleged "introduction, implementation, and approval of [a] racial ethnic change policy." (*See* Second Am. Compl. ("SAC") ¶ 3, ECF No. 102.) The Court addressed the extensive procedural history of this case in its previous Orders and incorporates that history herein by reference. (*See, e.g.*, MTD Order; Order Granting Defs.' Mot. to Dismiss & Denying Second Mot. to Strike, ECF No. 258.) At this time, the action survives only as to Operstein's claims against Defendants for (1) violation of Operstein's Fourteenth Amendment due process right "as it relates to [Defendants], in their personal and official capacities, terminating Operstein's employment despite her alleged lifetime contract and vested right to tenure; and (2) prospective injunctive relief against [Defendants] in their official capacities." (MTD Order 14, 17.)

On October 31, 2018, Defendants moved for summary judgment on Operstein's remaining claims. (Mot. for Summ. J. ("Mot.") 1, ECF No. 265.) Operstein opposed and requested additional time to complete discovery. (Corrected Opp'n to Mot. ("Opp'n"), ECF No. 284; Corrected Req. to Deny or Continue Summ. J. 2, ECF No. 286.) As discovery had not yet closed, the Court found that Operstein "should be permitted to conduct what discovery she may in the time allotted." (Minute Order ("MO"), ECF No. 289.) Accordingly, the Court continued the Motion hearing from February 4, 2019, to May 20, 2019, and set a Status Conference at the close of discovery on April 29, 2019.

At the Status Conference, the Court inquired into what discovery Operstein had propounded and what additional evidence she had obtained. (Minutes of Status Conference, ECF No. 297.) Operstein confirmed that she had propounded thousands of Requests for Admissions, hundreds of Requests for Production, and hundreds of

Interrogatories. Despite this, on the morning of the Status Conference, Operstein moved for additional time to conduct even more discovery. (Mot. to Extend Discovery Cut-Off, ECF No. 292.) Operstein did not identify any specific additional evidence obtained beyond that previously submitted with her Opposition. The Court denied any further continuance and, after carefully considering the papers filed in connection with the Motion, deemed the matter appropriate for decision without oral argument. (MO, ECF No. 298); Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

### III. LEGAL STANDARD

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law, and the dispute is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Conclusory or speculative testimony in affidavits is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Moreover, though the Court may not weigh conflicting evidence or make credibility determinations, there must be more than a mere scintilla of contradictory evidence to survive summary judgment. *Addisu v. Fred Meyer, Inc.*, 198 F.3d 1130, 1134 (9th Cir. 2000).

Once the moving party satisfies its burden, the nonmoving party cannot simply rest on the pleadings or argue that any disagreement or "metaphysical doubt" about a material issue of fact precludes summary judgment. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Cal. Architectural Bldg. Prods., Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir. 1987). A "non-moving party must show that there are

'genuine factual issues that properly can be resolved only by a finder of fact *because they may reasonably be resolved in favor of either party*.'" *Cal. Architectural Bldg Prods.*, 818 F.2 at 1468 (quoting *Anderson*, 477 U.S. at 250). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial. *Id.* (citing *Matsushita Elec. Indus.*, 475 U.S. at 586–87). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002). The court should grant summary judgment against a party who fails to demonstrate facts sufficient to establish an element essential to his case when that party will ultimately bear the burden of proof at trial. *See Celotex*, 477 U.S. at 322.

Pursuant to the Local Rules, parties moving for summary judgment must file a proposed "Statement of Uncontroverted Facts and Conclusions of Law" that should set out "the material facts as to which the moving party contends there is no genuine dispute." C.D. Cal. L.R. 56-1. A party opposing the motion must file a "Statement of Genuine Disputes" setting forth all material facts as to which it contends there exists a genuine dispute. C.D. Cal. L.R. 56-2. "[T]he Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the 'Statement of Genuine Disputes' and (b) controverted by declaration or other written evidence filed in opposition to the motion." C.D. Cal. L.R. 56-3.

### IV. DISCUSSION

Defendants argue that Operstein's § 1983 claim fails because the undisputed facts and evidence show that Operstein had no constitutionally protected property interest in continued employment with CSUF. They also argue that Operstein lacks standing to seek a permanent injunction enjoining the "Hispanization" policy because she has not suffered a particularized legal harm and would not likely benefit from the proposed relief.

## A. Request for Judicial Notice and Evidentiary Matters

### 1. Operstein's Request for Judicial Notice

Operstein requests that the Court take judicial notice of several documents, including excerpts from webpages, CSU faculty surveys, a budget memorandum, and the Declaration of Jose Cruz from her parallel proceeding in state court. (Req. for Judicial Notice ("RJN") Exs. 1–10, ECF No. 281.)

"[A] court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court takes judicial notice of only the existence of Operstein's exhibits, and not the truth of their content, as none falls under either of Rule 201's available prongs. *See Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) ("[A] court may not take judicial notice of a fact that is 'subject to reasonable dispute.'").

### 2. Evidentiary Matters

Defendants offer evidence in support of their Motion through the Declarations of Kristin Stang and Mark Schreiber. (Compendium of Evid., ECF No. 268.) However, Defendants provide no foundation or declaration supporting Exhibits 7 and 22. Accordingly, the Court does not consider Defendants' Exhibits 7 or 22.

Also, Operstein lodged a CD with the Court in support of her Opposition. (Notice of Lodging, ECF No. 282.) Operstein did not provide a copy of this CD to Defendants. (Decl. of Mark Schreiber in Supp. of Reply ("Suppl. Shreiber Decl.") ¶ 3, ECF No. 288.) Consequently, the Court does not consider Operstein's CD.

## B. Property Interest in Continued Employment

Defendants argue that Operstein cannot establish that they violated Operstein's constitutional rights by terminating her employment because the undisputed facts and evidence show that she had no property interest in continued employment, i.e., no "lifetime contract and vested right to tenure." Operstein contends that the offer of

employment she accepted via the 2011 Appointment "conferred on her the right to continued employment as long as she meets the cumulative performance covenants for reappointment during the pre-tenure period and after she meets the cumulative covenants for tenure." (Opp'n 11–12.) The parties' arguments are unclear as to whether they contend that Operstein's employment at CSUF was governed by regulation or contract. However, under either, Operstein had no property interest in lifetime employment because the undisputed facts show she was only ever either a probationary or terminal employee; never a tenured employee.

"To state a section 1983 claim, a plaintiff must allege facts which show a deprivation of a right, privilege or immunity secured by the Constitution or federal law by a person acting under color of state law." *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir. 1991). To have such a right, or "property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).

Under the plain language of the applicable regulations and Operstein's appointments, Operstein had no property interest in permanent employment at CSUF. The California Code of Regulations define employment appointments at CSU and provide that "[a]ppointments may be temporary, probationary, permanent or at the pleasure of the appointing authority." 5 C.C.R. § 42700(j). A probationary employee is "an employee who is serving a period of probation." *Id.* § 42700(s). The probationary period is the "period an employee must serve *before* becoming a tenured or permanent employee." *Id.* § 42700(r) (emphasis added). Once granted tenure, an employee has the right to continued employment. *See id.* §42700(q). Here, however, at all times prior to her terminal year appointment, Operstein was a *probationary* employee. She even "described herself has a 'probationary faculty' member." (DSUF 24.) Upon Operstein's acceptance of a terminal year appointment, any right to reappointment ended. Operstein argues that the statutory scheme distinguishes

"probationary" from "temporary," and thus her employment was somehow "permanent." (Opp'n 14 (citing 5 C.C.R. § 42700(j)).) But this argument fails on its face because the same regulation also distinguishes "probationary" from "permanent." Thus, under the regulations, as a probationary employee, Operstein had no right to permanent employment.

Operstein also had no right to lifetime employment at CSUF under the documents governing her employment. The parties do not dispute that the appointments, UPS, and CBA governed Operstein's employment at CSUF. (DSUF 5, 6, 7, 16.) These documents define probationary and tenured employees similar to the regulations, clearly differentiating the two. For example, UPS states that faculty appointments are of two kinds: probationary or tenured. (UPS 2.) A probationary employee is defined as a full-time faculty employee "serving a period of probation," which is the period of service *before tenure* is granted or denied. (CBA §§ 13.1, 13.2.) "Tenure-track faculty members are considered probationary faculty *until they are awarded tenure or terminated*." (UPS 2 (emphasis added).) Thus, it is not until an award of tenure that an employee is granted a right to permanent employment.

Here, Operstein's letters of appointment in 2014 and 2015 clearly denied her application for tenure. The 2014 Appointment stated, "I am not granting you early tenure." (2014 Appointment 1.) The 2015 Terminal Appointment stated, "your cumulative progress is . . . insufficient to merit early tenure and promotion." (2015 Terminal Appointment 1.) Operstein offers no documents or evidence to refute these denials or otherwise support the proposition that she held a vested right to tenure. Further, she conceded at deposition that she is unaware of the existence of such a document and that "[i]f such a document existed, then there would be no lawsuit." (DSUF 33, 34; *see also* Schreiber Decl. ¶ 4, Fed. Ct. Dep. of Operstein ("Operstein Fed. Dep.") 78:22–23, 82:19–20.) Accordingly, under the documents governing her employment, Operstein was a probationary employee who had not been granted tenure and thus had no right to permanent employment.

Operstein attempts to redefine the term "probationary period" as the "covenants period," by which she means the period in "which the covenants for lifetime employment were to be performed." (Operstein Fed. Dep. 109:11–13.) She contends that she has met and exceeded the "performance covenants many times over," and accordingly achieved tenure. (Opp'n 12.) However, Operstein's subjective understanding of her employment terms does not govern here. *See Am. Alt. Ins. Corp. v. Superior Court*, 135 Cal. App. 4th 1239, 1245 (2006) ("If contractual language is clear and explicit and does not involve an absurdity, the plain meaning governs."). The documents governing Operstein's employment are clear and explicit that "probationary" does not mean "tenured," the "probationary period" is not a "covenants period," and a probationary employee has no right to permanent employment unless and until awarded tenure.

The Supreme Court has held that a one-year non-tenured probationary teaching appointment that must be renewed does not carry a reasonable expectation of reemployment because the property interest expires on the same day as the appointment. *Roth*, 408 U.S. at 578. Here, as in *Roth*, Operstein held renewable non-tenured probationary teaching appointments that did not carry a reasonable expectation of guaranteed permanent employment. What is more, Operstein accepted an appointment to a terminal year, which clearly stated any further right to reappointment was foreclosed.

Operstein contends that CSUF grants tenure or reappointment to 99% of tenure-track faculty, which she takes to mean that she was guaranteed promotion. (Opp'n 6.) She relies on *Perry v. Sinderman*, 408 U.S. 593, 601 (1972), for the proposition that this statistic shows an unwritten "common law" at CSUF of granting tenure. (Opp'n 18.) In *Perry*, the Supreme Court held "there may be an unwritten 'common law' in a particular university that certain employees shall have the equivalent of tenure," particularly where the university has no explicit tenure system. *Id.* at 602. There, the Court found that an untenured teacher who had held the position for several

years "might be able to show from the circumstances of this service—and from other relevant facts—that he has a legitimate claim of entitlement to job tenure." *Id.* The teacher in *Perry* pointed to specific provisions of official guidelines on which he and other faculty relied that explicitly stated that "an experienced faculty member . . . may expect to continue in his academic position unless adequate cause for dismissal is demonstrated." *Id.* at 600–01 n.6.

The circumstances here are not like those in *Perry*. Operstein points to no official policy provision assuring her tenure or a permanent right to employment. She relies on inadmissible website articles and unsupported faculty retention surveys to argue that CSUF has a 99% rate of granting tenure or reappointment and this means she was guaranteed permanent employment. But the documents governing her employment explicitly state otherwise. Further, the college in *Perry* had no tenure system while CSUF has extensive and detailed tenure policies. Operstein has not demonstrated an "unwritten common law" at CSUF guaranteeing probationary employees tenure.

Finally, Operstein attempts to recast this issue as whether she *should have been* granted tenure. In her view, she met and exceeded the requirements for a tenured position and accordingly was automatically entitled to the position. She asks the Court to review her tenure-application materials and find that she met the requirements for tenure such that CSUF's denial deprived her of a property interest. First, this is not the question here. The issue before the Court is whether Operstein can establish that she *had* a property interest in permanent employment, *i.e.*, a lifetime contract or vested right to tenure, *not* whether CSUF should have granted her one. Second, the undisputed evidence demonstrates that she was a probationary employee, that her applications for tenure were denied, and she was never awarded tenure. Finally, academic decisions by faculty members of public educational institutions "require 'an expert evaluation of cumulative information and [are] not readily adapted to the procedural tools of judicial or administrative decisionmaking.'" *Regents of*

*Univ. of Mich. v. Ewing*, 474 U.S. 214, 226 (1985); *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957); *Cal. Faculty Ass'n v. Superior Court*, 63 Cal. App. 4th 935, 947 (1998).

The undisputed facts demonstrate that Operstein had no property interest in permanent employment, i.e., she had no lifetime contract and vested right to tenure. As such, CSUF's termination of her employment did not deprive her of a property right secured by the Constitution. Thus, Defendants are entitled to judgment as a matter of law, and summary judgment on this issue is proper.

## C. Prospective Injunctive Relief

Defendants argue that Operstein lacks standing to seek a permanent injunction enjoining the alleged "Hispanization" policy because she has not suffered a particularized legal harm traceable to the challenged conduct and would not likely benefit from the proposed relief.

"[S]tanding requires that (1) the plaintiff suffered an injury in fact, i.e., one that is sufficiently "concrete and particularized" and "actual or imminent, not conjectural or hypothetical," (2) the injury is 'fairly traceable' to the challenged conduct, and (3) the injury is 'likely' to be 'redressed by a favorable decision.'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992) (internal quotation marks and citations omitted). "Standing must be shown with respect to each form of relief sought, whether it be injunctive relief, damages or civil penalties." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (quoting *Friends of the Earth, Inc. v. Laidlaw Envt'l Servs. (TOC), Inc.*, 528 U.S. 167, 185 (2000)). For a plaintiff seeking prospective injunctive relief, "[t]he plaintiff must demonstrate that he has suffered or is threatened with a 'concrete and particularized' legal harm" coupled with a "real and immediate threat of repeated injury." *Id.* (quoting *Lujan*, 504 U.S. at 560 and *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974)). "[T]he claimed threat of injury must be likely to be redressed by the prospective injunctive relief." *Id.*

Here, Operstein lacks standing for the injunctive relief she seeks. As discussed above, Operstein suffered no injury in fact fairly traceable to the challenged conduct. She had no property interest in continued employment as a probationary employee; her probationary appointment came to an end by its own terms, at the end of her terminal year, with no reappointment rights. She presents no evidence that her employment ended as a result of the alleged "Hispanization" policy or to otherwise refute that she received the terminal year appointment for the reasons provided therein, i.e., that she lacked collegiality and sufficient progress toward tenure.

Further, even if Operstein had suffered a legal harm, Operstein would not benefit from the injunctive relief she seeks. She is a former employee and is not seeking employment at CSU or CSUF. "A plaintiff who cannot reasonably be expected to benefit from prospective relief ordered against the defendant has no claim for an injunction." *Bayer v. Neiman Marcus Grp., Inc.*, 861 F.3d 853, 864 (9th Cir. 2017). Operstein argues that she has standing to seek prospective injunctive relief because she is unemployed and seeking employment with the State of California, and that her application to UCLA was rejected. (Decl. of Natalie Operstein ¶ 24, ECF No. 278.) However, UCLA and CSU are separate institutions. Operstein confirmed at the April 29, 2019, Status Conference that she has not applied to CSU, so she would not benefit from an injunction prohibiting the alleged "Hispanization" policy there.

This Court has previously applied the concept of standing to dismiss Operstein's husband, Craig Ross. (MTD Order 7–9.) Ross argued he had standing because he was seeking academic positions at CSU and CSUF and that the alleged "Hispanization" policy prevented him from obtaining the positions. The Court found Ross lacked standing, in part, because he "provide[d] no details concerning his alleged aspirations for future employment: he fails to allege he submitted any applications, that there are open positions to pursue, or other indicia that the policy would have anything other than a remote possibility of affecting him. These vague allegations of potential future harm are not sufficient." (MTD Order 8–9.) The Court thus informed

Operstein of the requirements to establish standing in this regard. Yet she has failed to submit evidence supporting that she applied for positions at CSU or that CSU denied those applications because of the alleged "Hispanization" policy.

The undisputed facts show that Operstein suffered no injury in fact fairly traceable to the alleged "Hispanization" policy and she is not likely to benefit from the injunctive relief sought. Accordingly, she lacks standing to seek prospective injunctive relief. Defendants are entitled to judgment as a matter of law and summary judgment on this issue is proper.

## V. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment. (ECF No. 265.) The Court will issue Judgment.

**IT IS SO ORDERED.**

July 1, 2019

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**